IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, ex rel., JOHN M. O'CONNOR, ATTORNEY GENERAL OF OKLAHOMA, <br><br>  Plaintiff, <br><br> vs. <br><br> ASCENSION HEALTHCARE, ASCENSION MEDICAL GROUP, ASCENSION MEDICAL GROUP ST. JOHN LLC, <br><br>  Defendants. | Case No. _____ |

**PETITION TO ENFORCE THE
<u>OKLAHOMA ANTI-DISCRIMINATION ACT</u>**

Plaintiff, State of Oklahoma *ex rel.* John M. O'Connor, Oklahoma Attorney General, by and through the Attorney General's Office of Civil Rights Enforcement ("OCRE"), for its causes of action against Defendants, Ascension Healthcare, Ascension Medical Group, and Ascension Medical Group St. John LLC, (collectively, "Ascension"), alleges as follows:

<u>Nature of the Action</u>

1. The Attorney General has initiated this civil rights action in interest of the people of the State of Oklahoma to enforce the Oklahoma Anti-Discrimination Act, Okla. Stat. tit., §§ 1101 et seq. ("OADA"), and to stop Ascension from engaging in unlawful religious and disability discrimination against Oklahoma's healthcare heroes who have served faithfully and fearlessly on the front lines of the COVID pandemic and who have requested but have been denied religious exemptions from Ascension's COVID-19 vaccine mandate. After initial investigation of complaints accusing Ascension of discrimination, the OCRE has found reasonable cause to believe Ascension has engaged in unlawful discrimination.

2. On November 12, 2021, Ascension plans to suspend the employment of all of the Oklahoma healthcare heroes who have been denied a religious exemption and will fire them on January 4, 2022, unless they violate their sincerely held religious beliefs and submit to being fully vaccinated to save their jobs.

3. The Attorney General seeks an emergency temporary restraining order and temporary injunctive relief, stopping Ascension from suspending and firing any Oklahoma healthcare heroes who refuse to abandon their sincerely held religious beliefs until the OCRE has completed its investigation or until the Attorney General and Ascension have reached a conciliation agreement.

4. To vindicate the interests of the people of Oklahoma and the Oklahoma healthcare heroes who work for Ascension and who are adversely impacted by Ascension's discriminatory policies and practices, the Attorney General reserves the right to seek other relief as may be warranted by the results of its ongoing and rapidly expanding civil rights investigation.

## Parties Involved

5. Ascension is a nation-wide healthcare organization.

6. Ascension includes more than 150,000 associates and 40,000 aligned healthcare providers, and it operates in Oklahoma, 18 other states, and the District of Columbia.

7. In the Tulsa metro area alone, Ascension identifies dozens of hospitals, clinics, and specialty care facilities with which it is affiliated, including but not limited to Ascension Medical Group St. John, an Oklahoma limited liability company, and employs hundreds if not thousands of healthcare heroes in the Tulsa area.

8. OCRE has received verified complaints of discrimination from healthcare heroes who work for Ascension and have requested religious exemptions from Ascension's COVID-19

vaccine mandate, but their requests for reasonable accommodations based on their sincerely held religious beliefs have been summarily denied.

9. One of the Oklahoma healthcare heroes who has filed a complaint with OCRE and who is an aggrieved party to this action is Dr. Mitchell W. Duininck, who has been a practicing Christian all of his life and a practicing physician in Tulsa since 1986.

10. Dr. Duininck has been employed by Ascension in good standing as a highly regarded physician and program director of In His Image Family Practice Residency Program ("IHI") since approximately July 2011.

11. The Attorney General brings this action on behalf of Dr. Duininck and all of Ascension's other Oklahoma employees, including but not limited to those who live or work in Tulsa County, who have requested but have been denied a religious accommodation from Ascension's vaccine mandate and who have been threatened with the suspension and termination of their employment effective November 12, 2021 and January 4, 2022, respectively; as well as threatened disciplinary action for suspended employees.

12. This Court has jurisdiction of the parties and is the proper venue for this action, as the discriminatory acts at issue have occurred and are occurring in Tulsa County.

**General Allegations**

13. Paragraphs 1 through 12 of this Petition are incorporated herein by reference.

14. Dr. Duininck steadfastly adheres to his Christian beliefs and practices in his personal and professional life.

15. He prioritizes his religious beliefs professionally by working directly with Ascension, an avowed faith-based medical provider, and by serving as the President and CEO of In His Image, Inc. since 2006.

16. IHI is a Christian community-based family medicine residency training program.

17. IHI's primary teaching hospital is Ascension's St. John Medical Center, a major tertiary referral center in Tulsa.

18. Dr. Duininck and IHI have a very active family medicine inpatient service through Ascension to which they admit patients from IHI's clinic and emergency room. This service is run by IHI residents under the supervision of attending physicians like Dr. Duininck, who are employed by Ascension.

19. IHI's healthcare services, which are critical to the citizens of Tulsa and the surrounding area, includes obstetrics, antepartum and postpartum patients, newborns and children ranging in age from infants to teenagers. IHI physicians and residents treat many different adult medical problems and have a significant number of geriatric patients. They also provide medical consultations for surgical patients, both on a preoperative and postoperative basis. IHI residents are employed by IHI and contracted to work through Ascension.

20. Beginning in late July or early August 2021, Ascension announced that it would require all employees, contractors, and third parties to by fully vaccinated against COVID-19, regardless of their level of patient interaction and even if they worked fully remotely.

21. Ascension purported to make a way for employees and contractors to seek religious or medical exemptions from the vaccine mandate.

22. In the summer of 2021, Ascension announced that it would make an exemption application available the week of August 16, the deadline for submitting completed exemption applications would be October 1, and Ascension's decision regarding whether exemptions would be approved or denied would be made by October 12.

23. However, according to an article published in the *Journal Times* on August 23, 2021, Ascension had already decided to summarily deny any requests for religious exemption or

accommodation based on a sincerely held religious belief against the use of "fetal cell lines from historical abortions" in the development of COVID-19 vaccines. Ascension does not deny that all three vaccines currently available are derived from aborted fetal cell tissue. As a result, the purported exemption request and evaluation process for any sincerely held religious beliefs against the use of fetal cell lines from historical abortions in the development of COVID-19 vaccines was nothing but a sham and a pretext for outright religious discrimination. And Ascension, one of the largest Catholic health care systems in the United States, wholly rejects the Vatican/Pope Francis' position that 'vaccination, is not, as a rule, a moral obligation, and that therefore, it must be voluntary'.

24.   When employees, such as Dr. Duininck, used Ascension's portal to submit a request for religious exemption from the vaccine mandate, they were forced to check a box acknowledging that if they were not fully vaccinated on or granted a religious or medical exemption by November 12, 2021, their employment would be suspended and further non-compliance with the "vaccinate or terminate" policy would be deemed a "voluntary resignation," resulting in the involuntary termination of employment.

25.   Dr. Duininck was forced to check the "voluntary resignation" box to proceed with the submission of his request for a religious exemption, as were other Ascension employees across the country. *See* Verified Complaint for Declaratory and Injunctive Relief at 5, *Darling v. Sacred Heart Health Sys., Inc.*, No. 3:21-CV-01787-TKW-HTC (N.D. Fla. Oct. 27, 2021) (asserting that all employees had to check this box to submit their religious or medical accommodation requests).

26.   Despite being forced to check the mandatory voluntarily resignation box when submitting his request for religious exemption, Dr. Duininck confirmed to Ascension in writing

that he had no intention of resigning his employment and that any termination of his employment because he requested a religious exemption would be completely involuntary.

27. Dr. Duininck's request for religious exemption included a lengthy, well supported, seven-page letter to Ascension, which thoroughly explained that (1) his sincerely held religious belief regarding elective abortion made the use of fetal stem cells abhorrent and totally unacceptable, (2) that the COVID-19 vaccines being mandated by Ascension were developed with the use of aborted fetal stem cells, (3) accepting the COVID-19 vaccine developed through the use of aborted fetal stem cells would violate his sincerely held religious beliefs, and (4) he was willing to adhere to a wide range of well-recognized COVID-19 safety protocols as reasonable accommodations to Ascension's vaccine mandate in order to ensure the ongoing health and safety of others, such as regular testing *at his own expense*, use of face coverings, good hygiene practices, and other safety measures.

28. Dr. Duininck submitted his initial religious accommodation request on August 30, well in advance of Ascension's October 1 deadline.

29. On October 6, Dr. Duininck received an email from Ascension that summarily denied his request for religious accommodation from Ascension's vaccine mandate, as did numerous Ascension employees in Tulsa and around the country (over 650 Ascension healthcare workers were denied religious accommodation according to the *Complaint* in the *Darling* case).

30. The denial of Dr. Duininck's request, like other denials, was conclusory and provided no rationale or logic, but it allowed for seven (7) days to submit additional information for consideration, though it said nothing about what, if anything, was deficient or lacking in his original 7-page explanatory letter. Again, the process for submitting additional information for consideration was a sham and pretext for religious discrimination, as Ascension already had decided

to deny any requests for religious accommodation based on objection to the use of aborted fetal stem cells.

31. On October 9, Dr. Duininck received another email from Ascension, summarily declaring that granting his request for religious accommodation would present an undue hardship "because the vaccine is the most effective means to mitigate the risk to patient and workplace safety."

32. But Dr. Matthew Memoli strongly disagrees with Ascension.[1] Dr. Memoli is the director of the Laboratory of Infectious Diseases at the National Institutes of Health (NIH). He is a senior bioethicist who heads a research team at the NIH's National Institute of Allergy and Infectious Diseases (NIAID). Dr. Memoli opposes mandates for the COVID vaccines authorized for emergency use in the U.S. and has chosen not to be vaccinated for his own sincerely held religious reasons. "*I think the way we are using the vaccines is wrong*," Dr. Memoli emphasized in a July 30 email to Dr. Anthony Fauci, director of the NIAID. In fact, Dr. Memoli called mandated vaccination "extraordinarily problematic."

33. Dr. Memoli sought a religious exemption from the mandatory vaccine requirements imposed by health authorities in the District of Columbia, where he is licensed to practice medicine. Like Dr. Duininck and many other healthcare heroes, Dr. Memoli said he is willing to risk his job and his license for the right not to receive a COVID vaccine. During a roundtable open to the public on December 1, Dr. Memoli will make the case against mandates based on the latest scientific studies, many of which he and his team at NIH and NAIAD have overseen.

34. Dr. Duininck responded to Ascension's denial on October 11 and provided additional information in support of his request for religious accommodation on October 13.

---

[1] *See* https://childrenshealthdefense.org/defender/nih-matthew-memoli-vaccine-mandates-ethics/

35. Dr. Duininck's request was denied for a second time on November 5.

36. While the second denial characterized the review of the request as "individualized," the denial provided no factual information to substantiate the claim of an individualized assessment or of the basis for the conclusion that granting the religious accommodation would pose an undue hardship.

37. Instead, the second denial merely reiterated Ascension's conclusory assertion that "the decision to require COVID-19 and other vaccines is driven by [Ascension's] strong need to promote and protect the health and safety of our workforce and patients."

38. Ascension's second denial of Dr. Duinink's request also reiterated the threat that his failure to be fully vaccinated by November 12 would result in the suspension and ultimately the termination of his employment.

39. Ascension did not engage in a good faith, individualized assessment of the requests for religious accommodation of Dr. Duininck or others.

40. Ascension did not provide *any* factual support, much less *sufficient* support, to justify its conclusion that accommodating sincerely held religious beliefs would in fact pose an undue hardship when Ascension has been granting medical exemptions that provide for the very same accommodations as those sought by healthcare workers seeking religious exemptions.

41. Ascension has already started taking steps to prevent Dr. Duininck's patients from having access to and receiving critical healthcare services from him by prohibiting appointments with Dr. Duininck after November 12.

42. While Ascension has summarily denied requests for religious exemption and accommodation, it has granted requests of similarly situated employees for exemptions to the vaccine mandate based on medical reasons.

43. Similarly situated employees who have been granted medical exemptions by Ascension are being granted reasonable accommodations in lieu of the vaccine that are the same as the reasonable accommodations requested by Dr. Duininck and others who asked for religious exemptions—namely, regular testing, wearing face coverings, and following other standard COVID-19 safety protocols that healthcare workers have followed for nearly two years now.

44. In some instances, those who have been granted medical exemptions to the vaccine mandate have not been asked to do anything differently at all other than continue to follow the same safety measures that have been followed throughout the pandemic, even though Ascension has told Dr. Duininck and others who have been denied a religious exemption that granting a religious accommodation would pose an undue safety risk.

45. In other instances, Ascension has allowed similarly situated healthcare providers to continue working without having to comply with the vaccine mandate without regard for any religious or medical exemption. For example, Ascension has not required University of Oklahoma Physician Assistant students to comply with its vaccine mandate, though they rotate and perform healthcare services at St. John Medical Center in contact with patients and coworkers just like the employees of Ascension who have been denied religious exemptions and face suspension and termination beginning November 12.

46. But the evidence of Ascension's sham, discriminatory exemption and accommodation process does not end with the foregoing examples, though the foregoing examples alone are enough to establish reasonable cause to believe Ascension is engaged in unlawful religious and disability discrimination. There is more.

47. Ascension required IHI's resident physicians to apply for medical or religious exemptions from IHI, not Ascension. IHI notified Ascension that IHI had granted exemptions for

four of IHI's residents. Ascension has allowed the IHI residents to continue working at Ascension without being vaccinated while providing direct care to patients and working with coworkers. The accommodations that Ascension has granted them is the same as the accommodations allowed for those granted medical exemptions—face coverings and other standard COVID protocols—just as Dr. Duininck and others have requested for religious reasons but have been denied. Thus, Ascension's administration of its vaccine mandate policy is not only discriminatory, but arbitrary and capricious.

48. Another complainant who worked for Ascension as a nurse performing quality control work entirely remotely without any patient or coworker contact at all applied for a religious accommodation from Ascension's vaccine mandate. Rather than engaging in any genuine individualized inquiry of the request—as it is legally obligated to do—Ascension summarily denied her request, as it has done all others, stating that granting it would pose an undue hardship. Had Ascension actually evaluated the request on an individualized basis in good faith as required, it would have learned the truth that the nurse worked remotely, posed no risk or hardship all, much less an undue hardship.

49. With the threat of suspension and termination of his employment looming, Dr. Duininck timely filed his discrimination complaint with the OCRE on November 8, 2021, well within 180 days of Ascension's discriminatory denial of Dr. Duininck's request for religious accommodation.

50. The OCRE issued notice of Dr. Duininck's unperfected charge of discrimination to Ascension on November 9, 2021.

51. On November 11, 2021, Dr. Duininck filed his perfected Charge of Discrimination with the OCRE.

52. On November 10, 2021, the Attorney General contacted Ascension's Executive Vice President and General Counsel in a good faith attempt to reach an agreement regarding the postponement of the suspension of any Oklahoma healthcare heroes who had applied for but were denied a religious exemption during the pendency of the OCRE's investigation of the complaints it has received, but the parties were unable to reach an agreement.

### First Cause of Action: Religious Discrimination
**(Under Title VII and OADA)**

53. Paragraphs 1 through 52 of this Petition are incorporated herein by reference.

54. Dr. Duininck and the other Ascension healthcare workers on whose behalf the Attorney General brings this civil rights enforcement action are protected from religious discrimination by Title VII of the Civil Rights Act of 1964 and by the OADA.

55. Dr. Duininck and the other Ascension healthcare workers on whose behalf the Attorney General brings this civil rights enforcement action made timely and sincere requests for religious accommodation from Ascension's COVID-19 vaccine mandate.

56. For the reasons above, the OCRE has found reasonable cause to believe Ascension discriminated against Dr. Duininck and others when it summarily denied their requests for religious accommodation, while granting medical exemptions for similarly situated healthcare works and while allowing others to continue working without complying with the vaccine mandate at all.

57. Ascension has engaged in religious discrimination by treating employees who have requested religious accommodation less favorably than employees who requested and were granted medical accommodations.

58. Ascension has engaged in religious discrimination by failing to grant reasonable accommodations for the sincerely held religious beliefs of Dr. Duininck and others, when Ascen-

sion's actions in granting medical exemptions demonstrate the effectiveness of the available reasonable accommodations sought by Dr. Duininck and others.

59. Ascension plans to carry out its discriminatory actions to their ultimate conclusion by suspending Dr. Duininck and others on November 12 and by terminating their employment on January 4, 2022 if they fail to get fully vaccinated in violation of their sincerely held religious beliefs.

60. Dr. Duininck and others will suffer damages if Ascension is allowed to proceed with its discriminatory suspension and discharge of its employees who have requested religious accommodation.

61. The State of Oklahoma will suffer severe and irreparable harm as a result of the catastrophic loss of vital healthcare services resulting from the suspension and termination of many of Oklahoma's healthcare heroes.

62. The loss of such critical healthcare services has already begun in significant and dramatic fashion, according to leading, local sources at Ascension, who have contacted the Attorney General's office pleading for help to stop the discriminatory suspensions and terminations in order to prevent the collapse of Ascension's local healthcare delivery system.

### Second Cause of Action: Disability Discrimination
### (ADA and OADA)

63. Paragraphs 1 through 62 of this Petition are incorporated herein by reference.

64. Ascension treats and regards Dr. Duininck and other employees who have requested a religious accommodation as though they have a disability, namely, the communicable disease of COVID-19.

65. Suspending and terminating Dr. Duininck and others who Ascension regards as disabled because of their perceived disability is unlawful disability discrimination in violation of the Americans with Disabilities Act and the OADA.

66. Dr. Duininck and others will suffer damages if Ascension is allowed to proceed with its discriminatory suspension and discharge of its employees who have requested religious accommodation.

67. The State of Oklahoma will suffer severe and irreparable harm as a result of the catastrophic loss of vital healthcare services resulting from the suspension and termination of many of Oklahoma's healthcare heroes.

### Third Cause of Action: Injunctive Relief
### (25 O.S. § 1502.1)

68. If, at any time after the receipt of a verified charge, the Attorney General has reason to believe a respondent, like Ascension, has engaged in any unlawful discriminatory practice, the Attorney General may seek temporary injunctive relief against the respondent pending a final determination of proceedings pursuant to the OADA. 25 O.S. § 1502.1.

69. This Court has power to grant the Attorney General's request for a temporary restraining order and injunctive relief either by consent of Ascension or upon notice and finding of reasonable cause to believe Ascension has engaged in discrimination. 25 O.S. § 1502.1.

70. For the reasons above, the OCRE has found reasonable cause to believe Ascension has engaged and is engaging in unlawful discrimination, which will include suspending Dr. Duininck and others on November 12 and ultimately terminating their employment because of their sincerely held religious beliefs and because they're being regarded as disabled.

71. The OCRE seeks a temporary restraining order and temporary injunctive relief, restraining and enjoining Ascension from suspending or terminating Dr. Duininck and any other

Oklahoma-based employees who have requested a religious accommodation from Ascension's vaccine mandate until the OCRE has had an opportunity to conduct a full and fair investigation of Ascension's policies and practices in order to prevent any further unlawful discrimination.

72. A denial of the temporary injunctive relief that the Attorney General seeks will not only result in harm to the Ascension employees who will be suspended and terminated for their deeply held religious beliefs, but it will also cause irreparable harm to the patients who will be deprived of the healthcare services that they desperately need.

### Relief Requested

WHEREFORE, the Attorney General prays that the Court grant an emergency temporary restraining order and temporary injunctive relief pursuant to 25 O.S. § 1502.1, restraining and enjoining Ascension, Ascension's agents, and all other persons in active concert or participation with them, from suspending, terminating, or taking any other material adverse employment action against Dr. Duininck or any other employee because they have requested or have been denied a religious exemption from the Ascension vaccine mandate during the pendency of the Attorney General's investigation or from retaliating against any person who opposes the discriminatory practices that are being investigated or who engages in other activities protected by the OADA. The Attorney General further prays for such other relief as the Court deems just and proper.

Respectfully submitted,

JOHN O'CONNOR
ATTORNEY GENERAL

By: _____
    Kevin McClure, OBA No. 12767
    Tiffany J. Wythe, OBA No. 21405
    Julie Pittman, OBA No. 32266
    Assistant Attorney General
    313 NE 21st Street
    Oklahoma City, OK 73105
    Phone:  (405) 521-3921
    Fax:    (405) 521-6246

ATTORNEYS FOR PLAINTIFF,
STATE OF OKLAHOMA, ex rel.,
OKLAHOMA ATTORNEY GENERAL