IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, ex rel., JOHN M. O'CONNOR, ATTORNEY GENERAL OF OKLAHOMA, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 21-CV-488-TCK-SH<br>) |
| v. | )<br>) |
| ASCENSION HEALTHCARE, ASCENSION MEDICAL GROUP, ASCENSION MEDICAL GROUP ST. JOHN LLC, | )<br>)<br>)<br>) |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Remand (Doc. 12). Defendants filed a Response (Doc. 28) on November 19, 2021, and Plaintiff filed a Reply on November 22, 2021 (Doc. 29).[1] Therefore, pursuant to the Court's Order (Doc. 18), the Motion has been fully briefed. Having reviewed the filings and accompanying exhibits submitted by both parties, the Court **grants** Plaintiff's Motion to Remand.

At its core, this case is about conditions of employment, and whether a private employer can modify its employment conditions to require employees to be vaccinated in response to an unprecedented global pandemic. Within that framework, the issue is whether the law requires preliminary enjoinment of a mandatory vaccination policy. For the reasons that follow, the Court concludes that it does not have subject matter jurisdiction.

---

[1] The arguments asserted by Plaintiff to defeat this Court's jurisdiction based on the Eleventh Amendment, several abstention doctrines, and diversity were misleading, and unhelpful to the Court in deciding the issues in this case.

## I. BACKGROUND

Due to "the fast-moving nature of the COVID-19 pandemic and its ongoing threat to the health and safety of individuals receiving health care services in Medicare- and Medicaid-certified providers and suppliers," the Center for Medicare and Medicaid Services ("CMS") recently issued an interim final rule ("IFR") requiring healthcare employers to require COVID-19 vaccinations for their employees. 86 Fed. Reg. at 61,568; see also 42 C.F.R. § 482.42(g). The IFR only allows for exceptions to the vaccination requirement when required by Federal law. *See* 42 C.F.R. § 482.42(g)(3)(vi). CMS stated, that the "IFR preempts the applicability of any State or local law providing for exemptions to the extent such law provides broader exemptions than provided for by Federal law and are inconsistent with this IFR." 86 Fed. Reg. at 61,572 ; *see also* 86 Fed. Reg. at 61,568 ("We intend, consistent with the Supremacy Clause of the United States Constitution, that this nationwide regulation preempts inconsistent State and local laws as applied to Medicare- and Medicaid-certified providers and suppliers.").

Plaintiff filed a Petition for Enforcement of the Oklahoma Anti-Discrimination Act and Application for a Temporary Restraining Order ("TRO"), in Tulsa County, Case No. CJ-2021-3251, on November 12, 2021, seeking enforcement of State law. Plaintiff sought an order "restraining and enjoining Ascension from taking any [] adverse action against those who have sought a religious exemption until the Office of Civil Rights Enforcement ("OCRE") completes its pending investigation into complaints of discrimination" by Defendants. (Doc. 2-3 p.1). The Plaintiff further stated he had "reasonable cause to believe Ascension has engaged and is engaging in unlawful discriminatory practices in the implementation and administration of its mandatory vaccinate or terminate policy." (Doc. 2-3 p. 2).

Dr. Duininck filed a charge of discrimination with the OCRE against Defendants alleging the following:

In July or August of 2021, he was notified by Defendants that he would be required to be vaccinated for COVID-19 to continue his employment with Defendants. (Doc. 2-3, Ex. 1).

Plaintiff claims a sincerely held religious belief that prevents him from receiving the COVID-19 vaccination. *Id.* ¶ 3.

On August 30, 2021, Plaintiff notified Defendants of his religious beliefs and requested a religious accommodation exempting him from that mandatory vaccine policy. *Id.* ¶ 4.

As part of Plaintiff's request for an accommodation, Defendants required him to acknowledge that if he was not fully vaccinated or granted an accommodation by November 12, 2021, his employment would be immediately suspended, and that further non-compliance would be deemed voluntary resignation. *Id.* ¶ 5.

On October 6, 2021, Defendants summarily denied his request for a religious accommodation. *Id.* ¶ 6.

On October 9, 2021, Defendants acknowledged the sincerity of Plaintiff's beliefs and stated, "Due to the nature of your role and working onsite as well as with patients, it would pose an undue hardship on the organization to grant your religious exemption request because the vaccine is the most effective means to mitigate the risk to patient and workplace safety." *Id.* ¶ 7.

Plaintiff appealed Defendants' denial of his religious accommodation on October 11, 2021 and provided additional information in support of his request on October 13, 2021. *Id.* ¶ 8.

Defendants again denied Plaintiff's request on November 5, 2021 stating that the denial was not a challenge to his personal beliefs and the decision was driven by his strong need to promote and protect the health and safety of their workforce and patients. *Id.* ¶ 9.

Plaintiff claims that Defendants had determined in advance, before they notified him and other employees of the mandatory vaccination policy, that they would summarily deny all requests for religious accommodations based on the use of aborted fetal cell lines in the development of the vaccine. *Id.* ¶ 10.

Plaintiff claims Defendants failed to identify any undue hardship to justify its denial of his request. In fact, Plaintiff states he works close to another employee who was granted a medical exemption and remains unvaccinated, but Defendants have not given any additional instructions regarding reasonable accommodations beyond those precautions already in place. *Id.* ¶ 11.

Plaintiff claims Defendants have approved requests for religious accommodation for some non-employees working in their facilities based on sincerely held religious beliefs identical to his own beliefs. But Defendants have not provided any justifications for denying his request. *Id.* ¶ 12.

Defendants failed to engage in the interactive process to determine whether any other reasonable accommodations were available that would adequately protect Defendants' patients and staff while allowing Plaintiff to continue adhering to his religious beliefs. *Id.* ¶ 13.

Plaintiff claims Defendants believe he has or may acquire a communicable disease and are treating him as if he already has the disease, claiming Defendants are treating him as if he was disabled. *Id.* ¶¶ 14-15.

Plaintiff believes Defendants failed to accommodate his religious beliefs and are discriminating against him based on his religion and Ascension's perception that he is or will get COVID-19 making him disabled in violation of Title VII, the ADA, and the Oklahoma Anti-Discrimination Act. *Id.* ¶ 16.

Based on these same allegations, the state court granted a TRO on November 12, 2021, stating that it would grant a temporary and emergency order pending a full hearing set for

4

December 1, 2021, at 9:30 a.m. (Ex. 2). That Order provides that "Ascension HealthCare et al., is temporarily restrained and enjoined from suspending or terminating the employment of, or taking any other adverse action against, any of defendants' Oklahoma employees and contractors who have requested but have been denied a religious exemption from Ascension's COVID-19 vaccine mandate. Defendants shall rescind all such suspensions, terminations, or other adverse actions that have occurred prior to the entry of this order and allow Oklahoma employees an additional thirty (30) days from the entry of this order to submit requests for religious accommodations." The TRO further provides that "The Court enters this Temporary Restraining Order on a temporary and emergency basis and sets this matter for further hearing on the [1st] day of [December], 2021 to determine whether a temporary injunction should be granted during the pendency of the Attorney General's investigation of the complaints of discrimination that have been filed against defendants."

After the TRO was granted, Defendants filed a Notice of Removal in this Case. (Doc. 2). After the Removal was filed, the State of Oklahoma filed an Amended Complaint removing all federal causes of action. (Doc. 7).

**II. ANALYSIS**

Generally, any civil action brought in a state court where the United States District Courts have original jurisdiction may be removed by defendants to the United States District Court for the district and division embracing the place where the original suit pends. 28 U.S.C. § 1441(a). That said, federal courts are courts of limited jurisdiction, and the removal statute is subject to strict construction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810 (1986)(recognizing that removal "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system"); *Shamrock Oil &*

*Gas Corp. v. Sheets*, 313 U.S. 100, 107 (1941); *Wily v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 281-82 (5th Cir. 2007). Absent diversity jurisdiction, cases cannot be removed if the complaint fails to affirmatively allege a federal claim under the well-pleaded complaint rule. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 5-6.

The question remains, however, whether Plaintiff's Amended Complaint, filed after removal, superseded the original Complaint, and if so, whether the Amended Complaint raises a federal question despite the fact that Plaintiff has eliminated any references to the federal causes of action. Determination of this issue is based on reconciling Supreme Court precedent which establishes that the propriety of removal is determined on the basis of the original complaint filed in state court and not on post removal amendments,[2] with Supreme Court precedent that permits remand where the federal claim from the original complaint has been eliminated in an amended complaint. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988).

In *Carnegie-Mellon,* the Supreme Court resolved "whether a district court has discretion to remand a removed case to state court, as opposed to dismissing it, when all the federal-law claims have dropped out of the action and only the pendent state-law claims remain." 484 U.S. at 345. In *Carnegie-Mellon,* the plaintiffs filed suit in state court alleging a violation of federal and state employment discrimination laws as well as state-law tort claims. *Id.* Defendants removed the

---

[2] See *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)("[E]vents occurring subsequent to removal which reduce amount recoverable … do not oust the district court's jurisdiction once it has attached."); *Poore v. American-Amicable Life Ins. Co*., 218 F.3d 1287, 1290 (11th Cir. 2000)("[T]he district court must determine whether it had subject matter jurisdiction at the time of removal.") reversed on other grounds, *Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639 (11th Cir. 2007).

6

suit to federal court arguing that the complaint stated a claim under the Age Discrimination in Employment Act. *Id*. at 346. Six months later, Plaintiffs moved to amend their complaint to delete the federal law claims and filed a motion to remand. *Id.* The district court allowed the amendment and granted the motion to remand. *Id.* On review, the Supreme Court held that a district court had discretion to remand supplemental state law claims after the plaintiff dropped the federal claims on which removal was originally based. *Id.* at 357. The Court emphasized that a federal court must weigh the considerations of "economy, convenience, fairness, and comity" when determining whether to remand the amended complaint. *Id*. at 350.

In contrast, the *Eleventh Circuit in Poore v. American-Amicable Life Ins. Co*., 218 F.3d 1287 (11th Cir. 2000), reaffirmed the principle established by the Supreme Court in *St. Paul Mercury Indemnity, Co.,* 303 U.S. 283 (1938), that the time of removal is the critical jurisdictional juncture. In *Poore* the Eleventh Circuit was called upon to review the propriety of a remand in a class action diversity case based on an amended complaint that eliminated claims exceeding $75,000. Shortly after removal the Plaintiff sought leave to amend the complaint to delete the claims for punitive damages and to redefine the class to exclude any plaintiffs whose claims exceeded $75,000. The Eleventh Circuit, in noting that the district court must determine whether it had subject matter jurisdiction at the time of removal, appropriately held that the "[e]vents occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction." 218 F.3d at 1291. The Court acknowledged, however, that "other post-removal events may divest the district court of jurisdiction." *Id*. at 1291 n. 2.

Thus, *Poore* simply reaffirms the rule that a district court must view the events which exist at the time of removal – rather than subsequent events – when determining whether the Court

7

initially has removal jurisdiction. This rule is not at odds with the rule in *Carnegie–Mellon*, which provides that a Court has discretion to remand supplemental state law claims after the federal claims have been dropped and after the initial determination has been made that removal jurisdiction is appropriate.

Once the federal claims have been eliminated the only question for the Court is whether it should continue to accept or should decline to exercise jurisdiction over the pendent state claims. This analysis of the Court's jurisdiction is different from the analysis of whether the Court in the first place has removal jurisdiction. In the latter instance *Poore* instructs that post removal events should be ignored. *Poore* does not instruct, however, that a Court does not subsequently have discretion to reexamine whether it will retain jurisdiction over a case that only involves state law claims. That determination is based on considerations of "economy, convenience, fairness and comity" as instructed by the Supreme Court in *Carnegie–Mellon*.

Here, economy and convenience weigh in favor of remand because this case is in its very early stages, a fact the *Carnegie–Mellon* court deemed significant. 484 U.S. at 351. ("When the single federal law claim in the action [is] eliminated at an early stage of the litigation, the district court [has] a powerful reason to choose not to continue to exercise jurisdiction."). Furthermore, Defendants have not even answered the Amended Complaint due to the pendency of a motion to dismiss. Because of the status of the pleadings it is reasonable to assume that discovery is in the early stages as well. The Court has not yet expended a significant amount of judicial labor and time in this case and thus remand at this stage of the proceedings would not require a state court to duplicate the efforts of this court.

Principles of comity also weigh in favor of remand because the court will be called upon to interpret issues of state law that are best suited for determination by a state court. Lastly, principles of fairness will not be offended if the case is remanded to state court. Fairness in the context discussed by *Carnegie–Mellon* is addressed more to the issue of forum shopping. The *Carnegie–Mellon* court specifically recognized that a plaintiff's use of manipulative tactics to secure a state forum in which to try the case is a factor a district court can consider when deciding whether to remand a case. 484 U.S. at 357. This concern involved situations where federal claims had been eliminated late in a case in order to secure another judge (i.e. a state court judge) to try a case after the federal court has expended significant resources. That is not the case here because of the early posture of this case. Moreover, a remand to state court would merely effectuate Plaintiff's original choice of a state forum and, therefore, the traditional aversion of federal courts to forum shopping is not substantially implicated[3]

Finally, Defendants argue that although only state law claims remain in the Amended Complaint, they are preempted by the IFR, thus providing federal jurisdiction. The IFR requires Defendants' employees to be vaccinated and only allows for accommodations under Federal law. *See* 42 C.F.R. 482.42(g)(3)(vi). *See also* 86 Fed Reg. 61,569 (employers following "this IFR may also be required to provide appropriate accommodations, to the extent required by Federal law"). CMS expressly stated: "As is relevant here, this IFR preempts the applicability of any State or local law providing for exemptions **to the extent such law provides broader exemptions than provided for by Federal law and are inconsistent with this IFR**." (emphasis added). 86 Fed. Reg. 61,572. *See also* 86 Fed. Reg. at 61,568 ("We intend, consistent with the Supremacy Clause

---

[3] In fact, Plaintiff alleges it is Defendants who are forum shopping because the instant Motion to Remand was only filed after the state court issued a TRO in Plaintiff's favor.

of the United States Constitution, that this nationwide regulation preempts **inconsistent State and local laws** as applied to Medicare- and Medicaid-certified providers and suppliers.") (emphasis added).

"Preemption" is an affirmative defense to a state law claim which, alone, cannot invoke federal question jurisdiction as a well-pleaded complaint. *See, e.g.*, *Spear Marketing Inc. v. BancorpSouth Bank*, 844 F.3d 464 467 n.3 (5th Cir. 2016). An exception to the well-pleaded complaint rule exists where there is complete preemption of the state claim by federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

The complete preemption doctrine, also known as the artful-pleading doctrine, provides that the preemptive force of some federal statutes is so strong that "it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," such that removal is possible. *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 705 (5th Cir. 2012) (quoting *Caterpillar Inc.*, 482 U.S. at 393). For example, the Copyright Act is a federal statute that completely preempts the substantive field. *Id.* at 706. Complete preemption for the purpose of establishing federal subject matter jurisdiction is thus a purely jurisdictional doctrine distinct from ordinary preemption's defensive properties. *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

Complete preemption applies only when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). The Supreme Court has recognized only three statutory provisions as having such extraordinary preemptive force: (1)

Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185; (2) Section 502(a) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a); and (3) Sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86. *Sullivan v. Am. Airlines, Inc*., 424 F.3d 267, 272 (2d Cir. 2005). Thus, "[a]s a general matter, complete preemption is less common and more extraordinary than defensive or ordinary preemption." *Elam*, 635 F.3d at 803.

The question here is whether the IFR has a pre-emptive force "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc.,* 482 U.S. at 393. "[T]o determine whether a federal statute completely preempts a state-law claim within its ambit, the Court must determine whether the federal statute provides 'the exclusive cause of action' for the asserted state-law claim." *Sullivan*, 424 F.3d at 275-76 (quoting *Anderson,* 539 U.S. at 9).

As the removing party, Defendants fail to demonstrate that the IFR expressly "preempts the applicability of any State or local law providing for exemptions to the extent such law provides broader exemptions than provided by Federal law." 86 Fed.Reg. at 61, 572. First, the IFR does not provide a cause of action, but merely a mandate for vaccinations with accompanying avenues for exemptions. This is completely consistent with the Oklahoma law. See Okla. Const. Art. I, § 2; and Okla. Stat. 51 § 251-258. Further, the IFR at issue remains in the notice and comment phase before becoming effective. The comment period does not expire until "5:00 p.m. on January 4, 2022." *Id.* at 61,555. Providing for a comment period implicitly suggests that the rule may be reconsidered and that the level of uncertainty is high. It is always the case that an agency can regulate, or deregulate after the comment period is concluded. *See e.g. Perez v. Mortgage Bankers Assoc. et al*., 575 U.S. 92 (2015); *State of California v. Azar*, 911 F.3d 558 (2018).

11

Therefore, as the removing party, Defendants fail to demonstrate the IFR falls within the ambit of complete preemption. As such, the Amended Complaint provides no basis for subject matter jurisdiction and the case is remanded to Tulsa County District Court, Oklahoma.

**IT IS SO ORDERED** this 23rd day of November, 2021.

TERENCE C. KERN
United States District Judge